GREAT NORTHERN PAPER CO., INC.

v.

Peter W. ELDREDGE, et al.

Supreme Judicial Court of Maine.

Argued Oct. 7, 1996.
Decided Dec. 20, 1996.

Lynwood E. Hand (Orally), Severson, Hand & Nelson, P.A., Houlton, for Plaintiff.

Knud E. Hermansen (Orally), Old Town, Michael H. Griffin, Curtis & Griffin, Orono, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

DANA, Justice.

Peter W. and Cynthia M. Eldredge appeal from the judgment entered after a nonjury trial in the Superior Court (Aroostook County, *Archibald, A.R.J.*) finding that Great Northern Paper, Inc. (Great Northern), acquired a prescriptive easement in a road crossing the Eldredges' property. The Eldredges contend that the court erred when it found Great Northern's use of the road was continuous and adverse for the prescriptive period and that the Eldredges had acquiesced in Great Northern's use of the road. Finding competent evidence in the record to support the court's findings, we affirm the judgment.

The Eldredges own a parcel of land in Westfield known as Lot 9. Great Northern Paper, Inc., owns the land adjoining the southern boundary of the Eldredges' property. Sometime between 1945 and 1946, Great Northern began cutting wood on its property and hauled the wood over Lot 9 to reach the Simpson Road, a public road to the north of Lot 9. Great Northern continued to use the road intermittently for transporting wood from its land to the Simpson Road.

In 1989 the Eldredges filed a lawsuit against the Town of Westfield to determine

whether the Town owned the road across their lot and whether the Town was required to maintain the road. The court determined that the road was not a town way. The Eldredges installed a locked cable across the road in 1992.

In 1994 Great Northern filed an action against the Eldredges in the Superior Court requesting that the court enjoin the Eldredges from blocking the road. Great Northern contended that the Eldredges were unlawfully obstructing a town way by installing the cable across the road, and alternatively argued that the cable wrongfully blocked Great Northern's prescriptive easement. The court rejected Great Northern's claim for relief based on the Eldredges' alleged obstruction of a town way, but stated that it was "satisfied by much the great weight of the evidence that [Great Northern's] use, maintenance and repair of the [road crossing Lot 9] equates with the prerequisites of a prescriptive easement." The court permanently enjoined the Eldredges from preventing Great Northern's access to its property. The Eldredges then appealed.

The Eldredges first contend that the court's finding that Great Northern used the road continuously for the prescriptive period of twenty years was clearly erroneous. They argue that Great Northern's use was only sporadic and that its lack of use in some years precludes a finding of continuous use.

■ We will "review the factual finding as to the element of continuity of use for clear error, and will affirm a court's finding of fact if there is any competent evidence in the record to support it." *Gutcheon v. Becton*, 585 A.2d 818, 821 (Me.1991) (citations omitted). "Even though the evidence could support an alternative factual finding, that alone does not compel reversal of the findings [by the trial court] when they are supported by competent evidence." *Blackmer v. Williams*, 437 A.2d 858, 862 (Me.1981) (citation omitted).

■ The elements necessary for establishing the existence of a prescriptive easement are " 'continuous use for at least twenty years under a claim of right adverse to the owner, with his knowledge and acquiescence, or by a use so open, notorious, visible and uninterrupted that knowledge and acquiescence will be presumed.'" *Jost v. Resta*, 536 A.2d 1113, 1114 (Me.1988) (quoting *Dartnell v. Bidwell*, 115 Me. 227, 230, 98 A. 743, 744 (1916)). A claimant's use need not be constant to be continuous. *See, e.g., McGray v. Lamontagne*, 623 A.2d 161, 162 (Me.1993) (affirming prescriptive easement when claimant used road for cutting wood and for hunting and recreation purposes several times a year "most every year"). Intermittent use may be continuous for purposes of establishing a prescriptive easement if it is consistent with the normal use that an owner of the property would make and is sufficiently open and notorious to give notice to the owner of the servient estate that the user is asserting an easement. *Concerned Citizens of Brunswick County Taxpayers Ass'n v. North Carolina ex rel. Rhodes*, 329 N.C. 37, 404 S.E.2d 677, 686–87 (1991). *See, e.g., Ellison v. Fellows*, 121 N.H. 978, 437 A.2d 278, 280 (1981) (claimant's intermittent use of road to haul hay in summer was continuous for prescriptive purposes because of the nature of the road claimed); *Ward v. Harper*, 234 Va. 68, 360 S.E.2d 179, 182 (1987) (even though claimant did not use road weekly or monthly to access tree farm, intermittent use was continuous because the land was generally uninhabited).

■ There is sufficient evidence in the record for the court to conclude that Great Northern's use of the road crossing Lot 9 was continuous for twenty years. According to testimony at the trial, Great Northern started cutting wood on its land in 1946 and hauled some of that wood across Lot 9 to reach the Simpson road. An aerial photograph taken for Great Northern in 1951 showed two roads crossing the lot, one that ran due south from the Simpson road and another that traversed the lot in a southwesterly direction. In 1966, Forrest Austin, a logger, started a pulpwood cutting operation on Great Northern's land. Between 1966 and 1968 he cut approximately 30,000 cords of wood and used horses to transport some of this wood over Lot 9 to the Simpson Road. In 1974 or 1975, another logger, Gene Green, began cutting timber on the Great Northern

land and used the road on a daily basis into the 1980s. According to Green, the road was passable in a pickup truck, although it looked like it had not been used very much. In 1979, when John and Cynthia Logan[1] acquired Lot 9, the two roads were visible. The condition of the road was not very good, but John Logan believed it was being utilized and that it was a right of way for Great Northern. Great Northern improved the roadway shortly after the Logans acquired the lot, and between 1980 and 1994 cut approximately 67,000 cords of wood on its land to the south, hauling the timber northward to the Simpson Road.

The court could reasonably have concluded that Great Northern's use of the road was consistent with the normal use of timber property and that it was sufficiently open and notorious to put the owners of Lot 9 on notice of the use. Ray Goody, a manager for Great Northern, testified that Great Northern's forestry practices dictate timber harvesting every fifteen to thirty or forty years. John Logan testified that there were no structures on Lot 9 and referred to the property as his woodlot. Because there is competent evidence in the record showing that Great Northern used the road to transport wood beginning in 1946 and that it used the road regularly when timber harvesting required it, the court's finding of continuity was not clearly erroneous.

■ The Eldredges next take issue with the court's finding that Great Northern's use of the road was under a claim of right adverse to the owners of Lot 9. Adverse use occurs "when a party ... has received no permission from the owner of the soil, and uses the way as the owner would use it, disregarding his claims entirely, using it as though he owned the property himself...." *Blanchard v. Moulton,* 63 Me. 434, 437 (1873). Whether a claimant's use of the property is adverse is a question of fact, *Jacobs v. Boomer,* 267 A.2d 376, 380 (Me. 1970), and we will not disturb the trial court's finding unless it is clearly erroneous.

■ There is competent evidence in the record to support the court's conclusion that

Great Northern's use of the road on Lot 9 was adverse to the owners. John Logan testified that Great Northern did not ask his permission when it made improvements in the road in 1981. Ray Goody testified that Great Northern never sought permission to maintain or improve the road during its logging operations over the years. Furthermore, David Ash, a supervisor at Great Northern, stated that he had always believed Great Northern had legal access to the road, regardless of the actions of the landowners. The witnesses' testimony provided sufficient evidence for the court to conclude that Great Northern acted as if it had a right to use, maintain, and improve the road that was not subservient to the owners of Lot 9.

■ The Eldredges also argue that the court erred in finding Great Northern's use was adverse because Great Northern alternatively asserted in its pleadings that the road is a public way. A claimant's mistaken belief that a road is a public way may preclude the inference that the claimant's use is under a claim of right. *See Crosby v. Baizley,* 642 A.2d 150, 153 (Me.1994) (a mistake may make adverse possession unavailable when the mistake utterly negates the party's intent to claim title). A claimant may, however, pursue alternative theories of a public right of way and a prescriptive easement without defeating its own arguments. *See McGray,* 623 A.2d at 163. Great Northern's assertion that it had a right to use the road because it is a public way does not preclude it from also arguing that it acquired a prescriptive easement.

■ The Eldredges next contend that the court erred in concluding that they acquiesced in Great Northern's use of the road. They argue that because they filed a lawsuit against the Town of Westfield in 1989 and erected a locked cable in 1992, the court was precluded from finding the acquiescence necessary to a prescriptive easement. " 'Acquiescence' has been judicially defined as passive assent or submission to the use, as distinguished from the granting of a license or permission given with the intention that the licensee's use may contin-

---

1. The former Cynthia Logan is now Cynthia El- dredge, one of the defendants in this action.

ue only as long as the owner continues to consent to it." *Pace v. Carter,* 390 A.2d 505, 507 (Me.1978) (citing *Jacobs,* 267 A.2d at 378). · The Eldredges' assertion that they did not acquiesce in Great Northern's use is unavailing because Great Northern acquired its easement by prescription before the Eldredges filed their suit or installed the cable. Any relatively recent grants of permission or objections to Great Northern's use of the road after the end of the prescriptive period could not affect the validity of the easement that Great Northern had already acquired.

 Finally, the Eldredges contend that Great Northern's present use of the road exceeds the scope of any easement it could have acquired by prescription. To determine whether a prescriptive easement is overburdened "the factfinder must balance the prior use of the right of way established during the prescriptive period against any later changes in the method of use that unreasonably or unforeseeably interfere with the enjoyment of the servient estate by its current owner." *Gutcheon,* 585 A.2d at 822. Overburdening may occur when the change in use "manifest[s] itself in some greater independent burden on the servient estate," but a mere increase in the volume of traffic does not constitute a *per se* overburdening. *Id.*

 There is no evidence in the record showing that Great Northern's present use of the road has resulted in an unforeseeable interference with the owners' enjoyment of Lot 9. Although Great Northern is hauling more wood over the road than it has in the past, this increase in volume did not require the court to conclude that the easement was overburdened.

The entry is:

Judgment affirmed.

All concurring.