#24184-a-JKM

**2007 SD 84**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

HAMAD ASSAM CORPORATION, Plaintiff and Appellant,

v.

THOMAS NOVOTNY, Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CHARLES MIX COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE LEE D. ANDERSON
Judge

\* \* \* \*

KENNETH W. COTTON of
Wipf & Cotton, L.L.C.
Wagner, South Dakota

TIMOTHY J. GRANDE of
Mackall, Crounse & Moore          Attorneys for plaintiff
Minneapolis, Minnesota            and appellant.

TIMOTHY R. WHALEN                  Attorney for defendant
Lake Andes, South Dakota          and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 19, 2007

OPINION FILED **08/08/07**

#24184

MEIERHENRY, Justice

[¶1.]        Hamad Assam Corporation (Assam) brought this action claiming it had a prescriptive easement over a portion of farmland owned by Thomas Novotny (Thomas).  The trial court ruled against Assam.  Assam appeals and we affirm.

**FACTS**

[¶2.]        Assam purchased forty acres of land in Charles Mix County in 1993 (referred to as the Corporate 40).  The Corporate 40 abuts forty acres of land owned by the Novotny family since 1946.  A creek bed runs from the northwest corner to the southeast corner of the Corporate 40.  An unimproved section line runs along the property's west boundary and a minimally maintained township road runs along the south boundary.  Assam leases the Corporate 40 to Brad Bechen, a farmer who lives nearby.

[¶3.]        The Novotny land, referred to as the Novotny 40, was originally purchased by Thomas' father, Frank Novotny, in 1946 and passed to Thomas in 1996 after Frank's death.  The portion of the Novotny 40 over which Assam claims an easement was originally a nine acre strip of uncultivated native grass.  Frank Novotny, who farmed the land from 1946 until he retired in 1968, used the strip of native grass to prevent erosion, to serve as a turn-around point for his farm machinery, and to park equipment, trucks, and vehicles while working in the nearby field.  As a result of such use, a pathway was created along the east side of the nine acre strip of grass running north to south.  After Frank retired from farming, he leased the Novotny 40 to Vincent and Virgil Bechen, who were also relatives of Frank.  The Bechens used the pathway on the Novotny 40 in the same

-1-

fashion as Frank had and also occasionally allowed others to use the pathway to reach the Corporate 40. Frank did not oversee or restrict the Bechen's use of the land or pathway. Because of his relationship with and trust of the Bechens, Frank exercised very little oversight or management of the property. Shortly after Thomas acquired the Novotny 40, he leased the property to someone other than the Bechens. Thomas' most recent tenant, Terri Svatos (Svatos), began renting the property in 2003. Brad Bechen, son of Virgil Bechen, farms several pieces of Bechen property in the vicinity, some of which abuts the Corporate 40 to the east.

[¶4.] The creek bed running through the Corporate 40 was generally dry but temporarily accumulated water when the area received rain. Witnesses testified that after a substantial rainfall the creek remained wet and soggy for a few days, making it difficult for a vehicle to drive across and creating an obstacle in reaching the northern portion of the Corporate 40 from the west section line or south township road. Aerial maps and pictures showed attempts to create pathways across the creek by past and current owners/tenants. One former tenant created a causeway across the creek by piling rocks and other materials in the creek. There was also testimony that occasionally when the creek contained water, the pathway on the Novotny 40 was used to access the northern portion of the Corporate 40.

[¶5.] Use of the pathway to access the northern portion of the Corporate 40 ceased in 2003 when Thomas' current tenant tilled up the Novotny 40 nine acre grass strip in order to plant crops. Assam contacted Thomas claiming he had an easement to use the pathway. Thomas disagreed. Assam subsequently brought an

action to resolve the issue of whether Assam had a prescriptive easement over Novotny's land.

[¶6.] At trial, there was testimony about using the nine acre strip on the Novotny 40 to access the northern portion of the Corporate 40 after a "substantial rainfall." What constituted a "substantial rainfall" or the frequency of occurrence was unclear. Additionally, pictures showed several access points located along the creek that were well-worn, indicating that the northern portion of the Corporate 40 was normally accessed by entering the property by way of the east section line or south township road and then by driving over the dry creek bed. Ultimately, the trial court concluded that Assam had failed to establish that it possessed a prescriptive easement. Assam appeals and raises the following issue:

> Whether the trial court erred in determining that Assam did not have a prescriptive easement over Novotny's land.

## ANALYSIS

[¶7.] To establish a prescriptive easement, Assam must prove by clear and convincing evidence an "open, continued, and unmolested use" of the pathway across the Novotny land for twenty years and that the use was in a manner that was hostile or adverse to Novotny. Vivian Scott Trust v. Parker, 2004 SD 105, ¶6, 687 NW2d 731, 733. "In addition, for a prescriptive easement to exist, a party seeking the easement must use the property in a manner that is hostile or adverse to the owner." Thompson v. E.I.G. Palace Mall, LLC, 2003 SD 12, ¶7, 657 NW2d 300, 304. We have also said that the adverse "possession must be of such hostile, visible and continuous nature as to give the true owner notice of actual possession

and to put him on inquiry as to the invasion of his rights. . . ." Sioux City Boat Club v. Mulhall, 117 NW2d 92, 96 (SD 1962).

[¶8.]      The trial court concluded that Assam failed to carry its burden to prove the elements necessary for a prescriptive easement by clear and convincing evidence. In a memorandum decision, the trial court found that there was no evidence that Novotny knew "of the irregular use of the pathway over his land by [Assam]." As part of the findings of fact, the trial court found:

> 16. That [Assam] did not take any action nor make any effort to show that it used the pathway on the Novotny 40 to the physical exclusion of all others, including [Novotny], under a claim of right to said pathway.

> 17. That [Assam] did not fence in or otherwise enclose the pathway.

> 18. That [Assam] made no effort to improve the pathway; it did not gravel the pathway; it did not maintain the pathway; it did not grade or otherwise improve the pathway in any regard.
> . . . .

> 24. That there was evidence that persons other than the Novotny family utilized the pathway created by Frank on the Novotny 40 from time to time over the past years, but such use was irregular and sporadic. The use of this pathway by the [Assam] and others, however, did not interfere with the Novotnys' use of the Novotny 40 in any regard and, therefore, such use was not objectionable by the Novotnys.

> 25. That while the Bechens leased the Novotny 40, they did not stop the aforesaid persons from using the pathway on the Novotny 40 nor did they report to Frank or to the [Novotnys] that persons were using the pathway in any regard.
> . . . .

> 31. That neither Frank Novotny nor the [Novotnys] had any knowledge of who may or may not be using the pathway on the Novotny 40 during the time that they owned the property and [Assam] did not produce any evidence to show that [Novotny] or his predecessors in title had knowledge of the use of the pathway by [Assam] or anyone else under a claim of right.

#24184

[¶9.]     Assam does not contest any of the trial court's findings of fact; therefore, the sole issue is whether the facts as delineated by the court are sufficient to constitute adverse possession, thereby under the circumstances constituting a question of law for this Court to determine. Schultz v. Dew, 1997 SD 72, ¶11, 564 NW2d 320, 322. Specifically, Assam contends that it made a prima facie case because it showed an open and continuous use of Novotny's land for the statutory period with Novotny's knowledge.[1]

[¶10.]     A prima facie case for a prescriptive easement is established and a presumption that such use is adverse and under a claim of right arises when a party shows "an open and continuous use of another's land with the owner's knowledge. . . ." Thompson, 2003 SD 12, ¶8, 657 NW2d at 304. The presumption is created from the proof of an uninterrupted adverse use for the prescriptive period. Id. Novotny argues that Assam did not establish a prima facie case because its use was sporadic and irregular. Assam does not dispute this characterization, but contends that sporadic and irregular use does not defeat its claim. Thus, the issue becomes whether Assam's intermittent and sporadic use of the Novotny 40 can be characterized as open and continuous.

[¶11.]     To establish prescriptive rights, "possession must be of such hostile, visible and continuous nature as to give the true owner notice of actual possession

---

1.     Assam further argues that according to our holding in Shippy v. Hollopeter, 304 NW2d 118 (SD 1981), the continuous use of the field margin for the past twenty years was not necessary to establish a prescriptive easement. However, Shippy involved whether a previously established easement had been extinguished by irregular use. Id. Because we conclude that an easement was never created, we need not address whether it was extinguished.

and to put him on inquiry as to the invasion of his rights. . . ." *Sioux City Boat Club v. Mulhall*, 117 NW2d at 96. Our prior case law discussing the importance of giving the servient land owner notice is also consistent with the Restatement of Property's description of the claimant's burden in regards to the "open and continuous use" requirement. The Restatement provides that to constitute an open and continuous use, "the adverse use must be made in such a way that a reasonably diligent owner would learn of its existence, nature, and extent. . . . Sporadic and casual uses are generally not open or notorious." Restatement (Third) Property (Servitudes) §2.17 (2000). The open requirement means that the use is not made in secret, but is otherwise visible or apparent. Kokesh v. Running, 2002 SD 126, ¶13, 652 NW2d 790, 794; *see also* Restatement (Third) Property (Servitudes) §2.17 (2000).

[¶12.] The continuity requirement has two aspects, one mental and the other physical. Cook v. Hartman, 77 P3d 231, 238 (Mont 2003) (quoting Restatement (Third) Property (Servitudes) §2.17 (2000)). The mental aspect requires "that the prescriptive user remain in an adverse posture to the holder of the servient estate throughout the prescriptive period" while the physical aspect requires "that the use be open or notorious throughout the prescriptive period." *Id.* (quoting Restatement (Third) Property (Servitudes) §2.17 (2000)); *see also* Epstein, Elliot & Bissonnette, Ronald, Easements Ain't Easy, 15 MEBJ 52, 55 (2000). As long as the claimant's use is characterized as open, the fact that there is intermittent physical use of the estate is not fatal to the establishment of a prescriptive easement. *See* Great Northern Paper Co., Inc. v. Eldredge, 686 A2d 1075, 1077 (Me 1996) (stating that intermittent use may be continuous enough to establish an easement if it is

sufficiently open and notorious); Ward v. Harper, 360 SE2d 179, 182 (Va 1987) (stating that use need not be daily, weekly, monthly to be continuous); Ellison v. Fellows, 437 A2d 278, 280 (NH 1981) (stating that intermittent use is sufficient to establish prescriptive rights); Concerned Citizens of Brunswick Co. Taxpayers Ass'n v. NC ex rel. Rhodes, 404 SE2d 677, 686-87 (NC 1991) (stating that use must be often enough and with such regularity as to constitute notice to servient land owner); Restatement (Third) Property (Servitudes) §2.17 (2000). Therefore, the continuity element does not necessarily require the claimant to have used the servient estate constantly or frequently. *See* Restatement (Third) Property (Servitudes) §2.17 (2000). Rather, where the claimant's use is intermittent, the question becomes whether such use is "consistent with the normal use that an owner of the property would make and is sufficiently open and notorious to give notice to the owner of the servient estate that the user is asserting an easement." *Great Northern Paper Co. Inc.*, 686 A2d at 1077.

[¶13.] In this case, the record reveals that Assam's use of the Novotny 40 was not sufficiently open or continuous. The Novotny 40 was not the usual way of access to the Corporate 40. Assam only used the Novotny 40 to access the northern portion of the Corporate 40 when there was a "substantial rainfall" making access to the Corporate 40 difficult. There was no testimony that specified how often or how much it had to rain before Assam was required to use the pathway. One witness observed that when the creek filled with rain, the field was too wet to farm and there would be no need to access the property.

[¶14.]	This sporadic and intermittent use cannot fairly be characterized as definite or substantial so as to constitute an open and continuous use. The elements that a claimant must prove to establish a prescriptive easement serve to protect the servient land owner by providing him with notice of a prescriptive right. We are hesitant to alter property rights where the claimant's use of the servient estate is so infrequent that the title holder may have no notice as to its use or as to an adverse claim. The trial court found the evidence in this case insufficient to show an open and continuous use. Based on the record and applying our standard of review, we cannot say that the trial court erred when it determined the evidence was insufficient to establish a prescriptive easement.[2]

[¶15.]	Thus, we affirm the trial court based on Assam's failure to establish that the use of the Novotny 40 was open and continuous for the statutory period.

[¶16.]	GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.

---

2.	The court alternatively determined that the Novotny 40 was wild, unimproved, and unenclosed land and applied the test set forth in *Rancour v. Golden Reward Mining Co., LP*, wherein we recognized that where land is wild, unimproved, and unenclosed, the uninterrupted use of the land for the statutorily prescribed period does not raise a presumption that the use is adverse. 2005 SD 28, ¶9, 694 NW2d 51, 54. We need not address whether the trial court erred by applying *Rancour* since we affirm on the alternative theory.