2010 VT 91

# Andrew Schonbek, Trustee of the Isaiah 61 Foundation v. David Chase and Brianne Chase

[14 A.3d 948]

No. 09-292

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed October 8, 2010

Motion for Reargument Denied November 9, 2010

---

80

*Steven J. Kantor* of *Doremus, Roesler and Kantor*, Burlington, for Plaintiff-Appellee.

*Gary L. Franklin* of *Primmer Piper Eggleston & Cramer PC*, Burlington, for Defendants-Appellants.

¶ 1. **Reiber, C.J.** Defendants David and Brianne Chase appeal from a Chittenden Superior Court decision holding that: (1) plaintiff Andrew Schonbek, trustee of the Isaiah 61 Foundation, possessed a twelve-foot-wide prescriptive easement for vehicular and pedestrian ingress and egress across defendants' property; (2) defendants must immediately remove a fence from their property to allow plaintiff to make use of the easement; and (3) defendants must pay plaintiff over $80,000 in costs associated with plaintiff's construction and proposed destruction of an interior fire corridor — costs which, according to the trial court, would have been avoided if defendants had recognized the existence of plaintiff's easement.[1] We reverse.

¶ 2. The record reveals the following facts; additional facts will be set forth where they are relevant to our analysis. Plaintiff has been trustee of the lands and building at 150 Cherry Street in Burlington since 2003. Plaintiff uses the building as a restaurant and "public place of accommodation." For many years before, it was owned by the Knights of Columbus and used in their activities. Defendants own two nearby properties. One to the east, two doors down, is located at 158 Cherry Street. The 158 Cherry Street property is currently a drug store with a paved parking lot.

---

[1] The court also made findings of fact and conclusions of law regarding a nuisance claim and a spite-fence claim, but neither of those claims is at issue in this appeal.

Another, the Eastman building, not directly the subject of this dispute, abuts plaintiff's and defendants' property to the north. The Eastman property fronts on Pearl Street. Both the Eastman and 158 Cherry Street buildings have been in defendants' family for over a century.

¶ 3. Plaintiff's property extends just beyond the rear of its building. The back door of plaintiff's building opens into the intersection of two alleys: one running parallel to the line of the back wall of plaintiff's building, heading west toward Church Street and east toward South Winooski Avenue, and another running perpendicular to that line, heading north to Pearl Street along the side of the Eastman building. This case is about the use of those alleys to and from plaintiff's back door.

¶ 4. Plaintiff's back door is on the northeast side of the Cherry Street building. Upon exiting this door, one enters the intersection of the two alleys. The layout appears as follows: along the alley to the southwest, on the left-hand side of the door, is a fenced-in parking area; north of that parking area lies the other Eastman Building; to the east, on the right-hand side of the door, is a fence, built by defendants in 1999, that runs along defendants' property line and blocks access to South Winooski Avenue; past the narrow corridor between defendants' fence and plaintiff's building to the north, another alley leads to Pearl Street. To reach Pearl Street from plaintiff's back door requires crossing over the Eastman property and defendants' property at 158 Cherry Street. As the situation currently stands, defendants' property-line fence restricts movement through this alley to Pearl Street by creating a corridor that is only twenty-nine inches wide in places.

¶ 5. To conform to fire safety codes, plaintiff's building must have two means of egress that meet a minimum width. When purchasing the building, plaintiff was told that one emergency access route was out the back door and straight ahead through the narrow corridor to Pearl Street. Plaintiff later learned that he could not use the back door as a fire escape because fire safety codes required that an escape corridor be at least fifty inches wide. When plaintiff learned that he was not in compliance with fire safety codes, he approached defendants to discuss moving the fence or adding a gate to it; the fence would need to move only around twenty-one inches to create the fifty-inch corridor that plaintiff would need to meet fire safety codes and provide access to Pearl Street. Defendants offered to move the fence in exchange

for entry into a revocable license agreement which required a monthly monetary payment. Plaintiff refused defendants' offer and instead built an internal egress corridor that allowed the building to meet fire safety codes. Plaintiff then filed this lawsuit in 2005, alleging the existence of a prescriptive easement over defendants' property, as well as damages — later calculated to be over $80,000 — for the cost of building the internal egress corridor and taking it down if the prescriptive easement were recognized.

¶ 6. The case went to trial in November 2007. After two days of trial, both parties rested. The court, however, was not satisfied that it had enough information to decide the case. As a result, the court, over defendants' objections, reopened the record to allow plaintiff to introduce additional evidence on the historical uses of the alleyway. Plaintiff introduced such evidence during the third day of trial on October 24, 2008. Based on the evidence introduced during the third day of trial, the court awarded plaintiff a twelve-foot-wide prescriptive easement for general ingress and egress (vehicular and pedestrian) across defendants' property, as well as all of the over $80,000 in costs requested by plaintiff. The court also ordered defendants to "take down and remove the wire mesh fence and associated fence posts on their land" wherever the fence interfered with plaintiff's prescriptive easement.

¶ 7. Defendants raise three issues on appeal: (1) whether the trial court had authority to grant a twelve-foot-wide easement heading east when plaintiff's complaint appeared to request only a roughly two-foot-wide easement heading north; (2) whether the court erred in reopening the record for a third day of trial after plaintiff had rested his case; and (3) whether the court erred in concluding that plaintiff had met the requirements for establishing a prescriptive easement. The first two issues are claims of procedural errors, while the third goes to the merits of the case. Because we agree with defendants on the merits that the record does not support the existence of a prescriptive easement, we need not reach the claims of procedural errors.[2]

---

[2] We also do not reach plaintiff's motion to strike portions of defendants' reply brief and the photographs that were attached to that brief — a motion that is moot since we reach our decision today without relying upon the materials that plaintiff asks us to strike. Nor do we reach defendants' argument that plaintiff must meet a clear-and-convincing evidence standard to establish a prescriptive easement, since we hold that plaintiff failed to meet even a preponderance-of-the-evidence standard.

■ ¶ 8. To establish a prescriptive easement, plaintiff's use of the land must have been "open, notorious, continuous for fifteen years, and hostile or under claim of right." *Greenberg v. Hadwen*, 145 Vt. 112, 114, 484 A.2d 916, 917 (1984). These elements are "essentially the same" as those required to gain title to land by adverse possession. *Cmty. Feed Store, Inc. v. Ne. Culvert Corp.*, 151 Vt. 152, 155, 559 A.2d 1068, 1070 (1989). That said, the elements are not exactly the same. Adverse possession has the additional requirement that "the claimant must maintain exclusive possession of the claimed property during the statutory period," while, for prescriptive easements, the "use need not be, and frequently is not, exclusive." Restatement (Third) of Prop.: Servitudes § 2.17 cmt. a (2000).

■ ■ ¶ 9. More important for purposes of this case, servitudes taken by prescriptive easements and land taken by adverse possession differ greatly "in the nature of the interest acquired." *Id.* The Restatement of Property describes this distinction as follows:

> Successful adverse possession results in acquisition of a possessory estate, usually a fee simple . . . . The owner of an estate acquired by adverse possession is as free as other owners to change the use of the property.
>
> By contrast, the owner of a servitude is only entitled to make *the particular use authorized by the servitude*, whether that is for a road, pipeline, general access, or view.

*Id.* (emphasis added). This Court has similarly stated that the "nature and scope" of the use of property during the prescriptive time period "establishe[s] the general outlines of the easement." *Cmty. Feed Store, Inc.*, 151 Vt. at 158, 559 A.2d at 1071-72; accord, e.g., *Dennis v. French*, 135 Vt. 77, 79-80, 369 A.2d 1386, 1388 (1977) ("It is clearly the law in this jurisdiction that the owner of an easement cannot materially increase the burden of it upon the servient estate, nor impose a new or additional burden thereon. The *extent of the presumed right* is determined by the *user*, upon which is founded the presumed grant; the right granted being only *co-extensive* with the right enjoyed.") (citation omitted). As a result, although the current use may "vary in some degree" from the use that gave rise to the prescriptive easement, "[n]o use can

be justified under a prescriptive easement unless it can fairly be regarded as within the range of the privileges asserted by the adverse user." *Cmty. Feed Store, Inc.*, 151 Vt. at 157, 559 A.2d at 1071 (quotation omitted).

¶ 10. The main problem with the trial court's decision is that it failed to recognize the limits that necessarily accompanied any prescriptive easement that may or may not have been established by plaintiff's predecessors-in-interest. The trial court granted plaintiff an unlimited prescriptive easement "for the purpose of general ingress and egress, both pedestrian and vehicular," based upon evidence that, even when viewed in the light most favorable to the prevailing party below, established nothing more than intermittent use of the land *for specific purposes* — namely: (1) deliveries of fuel oil; (2) occasional use of the back door by upstairs tenants; (3) trash removal out the back door; (4) occasional use of the back door to transport Knights of Columbus regalia and banners through the alley; and (5) some unspecified amount of public pedestrian traffic one day per week on Bingo nights.[3] Thus, the most that plaintiff could have received by way of a prescriptive easement was the right to make use of the alley in these particular ways, not the right granted by the trial court for general ingress and egress. See, e.g., *Dennis*, 135 Vt. at 80, 369 A.2d at 1388 ("[T]he right granted [is] only *co-extensive* with the right enjoyed.").

¶ 11. Further, with the exception of the deliveries of fuel oil, all of the uses listed above were not just intermittent, but were in fact so infrequent as to be insufficient to establish a prescriptive easement. Although courts sometimes conclude that intermittent

---

[3] The trial court also noted that for some unspecified period of time "plaintiff's building was served by the backing down of a trash truck" through the alley. The testimony made clear that the trash truck was actually servicing dumpsters located outside of plaintiff's property. Plaintiff's only connection to this activity was that plaintiff's predecessors-in-interest paid to dump some of their trash in those dumpsters, but the dumpsters were well outside plaintiff's property. Thus, we need not decide whether an easement exists for use of a trash truck in the alley because any such easement would not belong to plaintiff. For similar reasons, plaintiff cannot establish an easement based on the trial court's finding that, at times, the residents of neighboring buildings might have made use of the alley to transport horses in and out of stables or to deliver groceries to a former Grand Union supermarket; such activities say nothing about whether *plaintiff's* predecessors-in-interest had a prescriptive easement.

use can be frequent enough to rise to the level of continuous use, see, e.g., *Great N. Paper Co. v. Eldredge*, 686 A.2d 1075, 1077 (Me. 1996), we agree with those courts that have held that, in general, "*sporadic* . . . use cannot fairly be characterized as definite or substantial so as to constitute an open and continuous use" and therefore does not meet the requirements of establishing a prescriptive easement. *Hamad Assam Corp. v. Novotny*, 2007 SD 84, ¶ 14, 737 N.W.2d 922 (emphasis added); accord, e.g., *Veach v. Day*, 304 S.E.2d 860, 863 (W. Va. 1983) ("[T]o support the establishment of a prescriptive easement the use of a way must be *more than occasional or sporadic*." (emphasis added)). Here, the court explicitly recognized that all of the "traffic out the back door" combined "may have been sporadic" and "not in great numbers." These uses therefore failed to establish a prescriptive easement.

■ ¶ 12. Turning to the use of the alley for fuel deliveries, the trial court noted that the Knights of Columbus acquired the property at 150 Cherry Street in 1965 and received frequent oil deliveries from 1965 "through some time after 1983" by driving over defendants' property. The trial court held that this established a prescriptive easement because "[d]elivery of fuel oil for over twenty years, twice a week and more in the heating season, constitutes . . . open, notorious, hostile and continuous use." As noted above, even assuming that this did establish a prescriptive easement, it would be an easement for the delivery of fuel oil, not the easement that the trial court granted for general ingress and egress. See, e.g., *Dennis*, 135 Vt. at 79-80, 369 A.2d at 1388.

■ ¶ 13. Additionally, to the extent that any easement might have been created by the fuel deliveries, undisputed evidence made clear that plaintiff's predecessors-in-interest abandoned it. The test for abandonment of a prescriptive easement is that "there must be, in addition to [nonuse], acts by the owner of the dominant tenement conclusively and unequivocally manifesting either a present intent to relinquish the easement or a purpose inconsistent with its future existence." *Rowe v. Lavanway*, 2006 VT 47, ¶ 16, 180 Vt. 505, 904 A.2d 78 (mem.) (quotation omitted). As the trial court noted, the testimony below established that the "Knights applied for a permit to permanently encase the oil tank in 1990, so there were no oil deliveries after that time." The testimony also indicated that when plaintiff's predecessors-in-

interest switched to heating the building with natural gas in 1990, they got approval for "on-site abandoning" of the oil tank and encased that tank in concrete. Fuel deliveries cannot be made to a fuel tank that has been encased in concrete. This action therefore "conclusively and unequivocally" manifested an intent to abandon any prescriptive easement that might have existed for fuel deliveries. *Id.*

¶ 14. The trial court also implied that the mere existence of the back door established a prescriptive easement to use the alleyway into which the door opened. We disagree. While in some instances the existence of a door can show intent to use the area directly in front of the door, and is therefore open and notorious use of that area, plaintiff cannot prevail on such a claim here because the back door of plaintiff's building faces the alley and the rear of the Eastman building, not defendants' 158 Cherry Street property or the portion of the alleyway that is fenced in and indisputably owned by defendants. Thus, even if the alleyway margin into which the door opens was not on plaintiff's property and was offered to show open and notorious use here, it would create an easement over the Eastman property, which plaintiff does not claim in this case.

¶ 15. Finally, plaintiff claims that its predecessors-in-interest established a prescriptive easement by maintaining and cleaning the alley outside the back door. This is an insufficient basis for showing open and notorious use. See *First Congregational Church of Enosburg v. Manley*, 2008 VT 9, ¶ 15, 183 Vt. 574, 946 A.2d 830 (mem.) (upholding trial court's conclusion that mowing grass was not sufficiently open and notorious to establish adverse possession because "[a]lthough mowing the grass may be evidence of a claim of right, lawn-mowing could [also] well have been an act of neighborly accommodation." (quotations omitted)).

¶ 16. For these reasons, the record does not support the trial court's conclusion that plaintiff currently has a prescriptive easement over defendants' land.

*Reversed; plaintiff's complaint is dismissed.*