VERMONT SUPERIOR COURT

Grand Isle Unit

PO Box 7

North Hero VT  05474

802-372-8350

www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-04320

---

Brian McKenzie et al v. Quintin Point Condominium Association

---

## ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

The parties in this case filed cross motions for summary judgment in this easement case. The central dispute is whether Plaintiffs have an easement, express, implied, or prescriptive, across a strip of Defendant's land.

Plaintiffs, Brian and Catherine McKenzie, move for summary judgment on three theories: (1) they have an express easement based on the original deed, or alternatively (2) they have acquired a prescriptive easement, or (3) an implied easement by grant.  Defendant Quintin Point Condominium Association moves for summary judgment on the opposite grounds, contending that Plaintiff has no easement, express, prescriptive, or implied by grant.  It seeks an order declaring that it owns what the parties refer to as the contested area free and clear.

Plaintiffs moved for Summary Judgment on October 17, 2025.  Defendant, in turn, responded and filed a cross-motion for Summary Judgment on November 4, 2025.  On December 12, 2025, Plaintiffs responded to both Defendant's reply and cross-motion as well as the statement of undisputed material facts (SUMF), filing a supplemental statement.  On January 9, 2026, Defendant responded to Plaintiffs' reply and their additional SUMF, as well as filed an additional SUMF.  Plaintiffs did not respond to Defendant's additional SUMF.  Neither party requested nor did the Court hear oral arguments on this matter.

Upon consideration of the briefings and arguments contained within, the Court denies Summary Judgment for both parties regarding claims of an express easement and grants Summary Judgment for Defendant on the claims of a prescriptive easement and implied easement by grant.

## Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. Rule 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994).

In motions for summary judgment, the moving party submits a list of undisputed material facts upon which their motion relies.  The non-moving party then may respond to the facts, disputing them, and may additionally "file a separate and concise statement of additional

material facts." V.R.C.P. Rule 56(c)(2). If a party fails to address a fact as Rule 56(c) requires, the Court may do the following:

1. Give an opportunity to properly support or address the fact;
2. Consider the fact undisputed for purposes of the motion;
3. grant summary judgment if the motion and supporting materials-- including the facts considered undisputed--show that the movant is entitled to it; or
4. Issue any other appropriate order.

V.R.C.P. Rule 56(e). Parties must support all facts presented by admissible evidence, and the Court will disregard conclusory facts and conclusions of law. *H & E Equipment Services, Inc. v. Cassani Electric, Inc.*, 2017 VT 17, ¶ 20, 204 Vt. 559.

In deciding cross-motions for summary judgment, the Court will give the respective non-moving party the benefit of all reasonable doubts and inferences. *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356.

## Undisputed Material Facts

A. Ownership and Conveyance History

Paul Quintin originally owned all the land relevant to this dispute. Plf. SUMF ¶¶ 3–4; Def. SUMF ¶¶ 3–4. In 1985, Quintin conveyed a southern parcel to Philip Gerbode, retaining ownership of the land located to the north. *Id.*

In 1996, Philip Gerbode created a two-unit condominium on the conveyed land, consisting of Unit 1 on the western portion of the property, Unit 2 on the eastern portion, and a central common area. Plf. SUMF ¶ 6; Def. SUMF ¶ 5. That same year, Philip Gerbode conveyed Unit 2 to Seiple. Def. SUMF ¶ 11; see Def. Ex. A. Title later returned to Penelope A. Gerbode, Trustee of the Penelope A. Gerbode Trust, in 2015, and Penelope Gerbode conveyed Unit 2 to Plaintiffs in 2018. Def. SUMF ¶¶ 12–13; see Def. Ex. B; Def. Ex. C.

In Section III of the 1996 Declaration of Gerbode/Seiple Condominium, Gerbode provided a right-of-way over an existing driveway on the Unit 1 property through the Common Area to Unit 2 for access. Def. SUMF ¶ 25. In 2018, the First Amendment to the Declaration replaced this provision. Def. SUMF ¶¶ 26–27. Instead, it purported to grant a right-of-way over the Contested Area through Building #7, providing access from Briarcliff Drive directly to Unit 2. *Id.* The 2018 McKenzie Deed incorporated this amendment. *Id.*

B. Physical Layout

The 1985 Deed includes monuments and metes and bounds describing the property boundary. The 1985 Deed states the northern boundary of the conveyed land runs "along the edge of the common camp drive," a gravel road now known as Briarcliff Drive, to an "iron pipe." See Plfs Ex. C at 2. However, the monument markers for the northern boundary are set back from the edge of the drive. As a result, a strip of land exists between Briarcliff Drive and

Plaintiffs' property. The parties refer to this strip as the "Contested Area," and it is undisputed that Defendant owns it.

The 1985 Deed granted "a right of way in common with others from Town Highway No. 1 over a gravel drive located north of the conveyed land to the east boundary thereof." Def. SUMF ¶ 17; see Plfs Ex. C at 3.

The 1985 Deed also reserved a life estate to Donald Fisher for a camp located on the property ("the Fisher Camp") and a right-of-way to access it. Def. SUMF ¶¶ 21–23; Plf. SUMF ¶ 9. The parties dispute whether the right-of-way was also a life estate. *Id.* The deed did not specify the location of the Fisher Camp or the right-of-way. *Id.*

The 1985 survey referenced in the deed depicts a barn near the northern boundary of the conveyed land. Def. SUMF ¶¶ 33–34. The barn later became Buildings #5, #6, and #7. Def. SUMF ¶ 34. The survey does not depict any driveway or vehicular access east of the barn/buildings. Def. SUMF ¶¶ 35–38. The parties agree that a driveway has historically existed, but dispute whether it has always crossed the contested area to Briarcliff Drive. Def. SUMF ¶ 32; Plf. SUMF ¶ 15. Further, the parties dispute when this driveway from Briarcliff Drive was constructed. Additionally, the survey depicts a waterline easement at the northeast corner of the property, now Unit 2. Def. SUMF ¶¶ 42–43

C. Historic Use

Philip Gerbode owned all the land conveyed by the 1985 Deed for eleven years before creating the condominium in 1996. Plf. Supp. SUMF ¶ 1. After conveying Unit 2 to the Seiples in 1996, Gerbode continued to own and reside at Unit 1 until approximately 2020. *Id.* The parties dispute the nature and extent of Gerbode's use of the Contested Area during his ownership. Plf. Supp. SUMF ¶¶ 3–4; Def. SUMF ¶¶ 66–68; *See* Plfs. Ex. H

The Seiple's, who owned Unit 2 from September 13, 1996, to August 20, 2015, accessed Unit 2 via the Common Area from Unit 1. Def. SUMF ¶ 70. They also did not use Building #7 to park their vehicles or permit anyone to access Unit 2 through the Contested Area. Def. SUMF ¶¶ 71–72. They occasionally accessed Building #7 through the Contested Area, but only with Quintin's express permission. Def. SUMF ¶ 73. Additionally, they had the Contested Area mowed with Defendant's permission. Def. SUMF ¶¶ 88–89

Upon the sale in 2015, Gerbode resumed having the area mowed. Def. SUMF ¶ 90. Then, upon the Coburns purchasing Unit 1, they began mowing the Contested Area. Def. SUMF ¶ 91. At no point did Plaintiffs mow the Contested Area.

In 2017, Penelope Gerbode installed an unpermitted driveway to the east of Building #7. Def. SUMF ¶ 49. Also in 2017, the Town of North Hero issued a notice of zoning violation to Penelope Gerbode, owner of unit 2. Def. SUMF ¶ 50. The driveway was removed, and the area was reestablished with topsoil and grass in 2018. Def. SUMF ¶ 51. Also in 2018, the Gerbode installed an unpermitted driveway through Building #7. Def. SUMF ¶ 52.

A driveway was again constructed in 2023 for the construction of Plaintiffs' home, with the Quintins' permission. Def. SUMF ¶ 80. Plaintiffs continued using the driveway after construction finished, and as a result, Defendant issued a Notice Against Trespass in 2024. Def. SUMF ¶¶ 83–84.

All buildings, as well as Unit 2, may be accessed through the Unit 1 driveway. Def. SUMF ¶¶ 57–59.

No plat or survey associated with the property depicts a driveway crossing from Briarcliff Drive over the Contested Area to enter Unit 2, either through Building #7 or to the east of it. Def. SUMF ¶ 38. Plaintiffs admit they are unaware of any plat that depicts such a driveway. Def. SUMF ¶ 39. Only the 2024 McKenzie Plat shows a driveway entering Building #7, but that driveway was never constructed due to the current dispute. Def. SUMF ¶ 41.

## Conclusions of Law

Based on the undisputed material facts, the Court concludes that there are material disputes concerning the express easement, but that, based on the undisputed facts as a matter of law, the plaintiffs' claim for a prescriptive or an implied easement fails.

### A. Express Easement

"The interpretation of an express easement is a question of law." *Gladchun v. Eramo*, 2023 VT 5, 217 Vt. 481 (quoting *Post & Beam Equities Grp., LLC v. Sunne Vill. Dev. Prop. Owners Ass'n*, 2015 VT 60, ¶ 56, 199 Vt. 313. The essential question in a deed regarding an easement is the parties' intent at the time the easement was created. *Id*. (quoting *MontChilly, Inc.*, 2020 VT 77, ¶ 23, 213 Vt. 175). In interpreting an easement, Courts begin with the plain language of the deed, as that is generally the best way to find the intent of the parties. *Id*. (quoting *Kipp v. Chips Est.*, 169 Vt. 102, 105 (1999)). A court will implement the plain language if the deed is not ambiguous. Ambiguity exists when reasonable minds could differ on the meaning. Ambiguity may be shown through the existence of limited extrinsic evidence in combination with the writing to show a secondary reasonable expectation. *Id*. Courts "read the entire written instrument as a whole, giving 'effect to every part' so as to understand the words in the context of the full deed. *Kipp v. Chips Est.*, 169 Vt. 102, 105 (1999) (quoting *Aiken v. Clark*, 117 Vt. 391, 393 (1952)).

Here, the right-of-way along the gravel road comes into existence in the 1985 Deed. The 1985 Deed grants the following to Gerbode:

> a right of way in common with others from Town Highway No. 1 over a gravel drive located north of the conveyed land to the east boundary thereof.

This language tells us the right-of-way is north of the northern boundary and runs to the eastern boundary. Because the Court is required to interpret the deed as a whole, it looks to the 1985 deed's description of the northern property boundary, as well:

> Beginning at a one-half inch diameter iron pipe driven flush to the ground (Point 1) situated 25 feet easterly of the center-line of Lake View Drive (Town Highway

No. 1); said Point 1 also being 11 feet southerly of the center of a common camp drive and 8.75 feet northerly from the face of utility pole No. 2/89;

Thence South 54 degrees 59' 47" east along the edge of the common camp drive, 258.30 feet to Point 2, a 3 foot high 1 inch diameter iron pipe. Point 2 is located .2 feet off an old concrete foundation and 27 feet from the nearest corner of a small barn. Point 2 is also 44 feet radially from the center of the curving common camp drive;

This language states that the northern boundary between Gerbode's and Quintin's properties runs east "along the edge of the common camp drive." Critically, the deed does not state it runs parallel to the common camp drive, it states it runs along the edge. However, the description also includes land markers or monuments, that when mapped by a surveyor leave a gap between the edge of the common camp drive and the northern boundary.

The ambiguity arises because under Vermont law, the placement of the monuments controls, creating the contested area. *Phillips v. Savage*, 151 Vt. 118, 119 (1989) (citing *Rambeau v. Barrows*, 127 Vt. 550, 554 (1969)). But, based on the plain language of the deed, the parties believed the northern boundary of the Gerbode parcel was the southern edge of the road, meaning no contested area would exist, and there would be no need for any easement over the contested area because it would belong to Gerbode.

The parties' intent, while primarily drawn from the plain language, may also be drawn from "the object and purpose to be accomplished by the easement." *Roy v. Woodstock Cmty. Tr., Inc.*, 2013 VT 100A, 195 Vt. 427 (quoting *Barrett v. Kunz*, 158 Vt. 15, 18 (1992)). The general purpose of a right-of-way is to provide access to property. See *Busalacchi v. McCabe*, 883 N.E.2d 966 (Mass. App. 2008) (stating a right of way implicitly includes the rights of ingress and egress); see also *Roy v. Woodstock Cmty. Tr., Inc.*, 2013 VT 100A, ¶ 24 n. 5, 195 Vt. 427 (citing Massachusetts case law regarding easements with approval).

Here, the object and purpose were to allow for access from Briarcliff Drive (the right of way) to the Gerbode property. The parties contest whether a driveway existed in 1985, and the 1985 survey is not conclusive on this point. See Plfs Ex. E. If no driveway existed at that time and the contested area did in fact exist, then this easement over the right of way was useless and did not accomplish its intended and necessary purpose – to provide access to Gerbode's new parcel.

Additionally, the right-of-way describes access "to the east boundary thereof." However, the road curves before reaching the eastern boundary of either property. This raises a further question: if the parties intended the right-of-way to be solely for driving along Briarcliff Drive without any right of access to the property, the language extending the easement to the east boundary would serve no apparent purpose. If, as Defendant claims, there was a driveway already in existence in 1985, there would be no reason for the easement to extend beyond that driveway unless the intent was to allow for additional driveways.

Because of the two interpretations of the northern boundary, there are also various interpretations of the right-of-way. One interpretation is that the parties believed the right-of-way should abut the property line, granting ingress and egress rights to the Gerbode parcel all along that northern boundary. Second, the parties intended a gap between the right-of-way and

the property, yet designated the right-of-way as the means of ingress and egress, and expected an unwritten expressed intent to control. Third, they believed a space should exist between the property and the right-of-way, with the current driveway to Unit 1 as the only ingress and egress point. Finally, they understood the space between the property and the right-of-way was solely for driving, with no access to the property itself.

Given these interpretations, the Court finds the right-of-way language to be ambiguous. Once ambiguity is established, "the interpretation of the parties' intent becomes a question of fact to be determined based on all of the evidence—not only the language of the written instrument, but also evidence concerning its subject matter, its purpose at the time it was executed, and the situation of the parties." *Post & Beam Equities Grp., LLC v. Sunne Vill. Dev. Prop. Owners Ass'n*, 2015 VT 60, ¶ 56, 199 Vt. 313 (quoting *DeGraff v. Burnett*, 2007 VT 95, ¶ 20, 182 Vt. 314) (quotations omitted).

Two key pieces of extrinsic evidence remain in dispute. First, the parties dispute when the existing driveway from Briarcliff Drive to Unit 1 was constructed. If the driveway existed at the time of the 1985 Deed, it would suggest – though it does not address the issue conclusively – the parties contemplated ingress and egress from the right-of-way to the property at a specific location. If it did not, that would bear on the parties' understanding of what the right-of-way was intended to accomplish. Second, the parties dispute Philip Gerbode's historic use of the Contested Area. Gerbode, as the original grantee of the 1985 Deed, is uniquely positioned to speak to the parties' intent.

However, the Gerbode Declaration faces several challenges.[1] Defendant argues it is ambiguous in two critical respects. First, with respect to timing: Gerbode states that he "regularly and routinely crossed the strip of land" "[t]hroughout this time," but does not specify whether this pattern of use existed at the time of the 1985 conveyance, began at some later date, or changed when he conveyed Unit 2 to the Seiples in 1996. Plfs. Ex. H ¶¶ 3–4. For purposes of interpreting the parties' intent at the time the easement was created, the relevant period is 1985, not the decades that followed. The Declaration does not isolate that moment. Second, with respect to location, Gerbode states he crossed the Contested Area "to access the barn and garage," but does not specify where along the Contested Area he crossed. Plfs. Ex. H ¶ 4. The barn eventually became Buildings #5, #6, and #7. Building #5 fronts the existing Unit 1 driveway and has always been accessible from it. Crossing the Contested Area at the Unit 1 driveway to reach Building #5 is materially different from crossing the Contested Area east of Building #7, which is where Plaintiffs seek to construct a new driveway. The Declaration does not distinguish between these routes.

Moreover, even setting aside ambiguity, the parties dispute the substance of Gerbode's claimed use. Defendant concedes that Gerbode regularly used the existing Unit 1 driveway to access Building #5 and occasionally Building #6. However, Defendant disputes that this use required any separate route across the Contested Area, contending that both buildings were accessible from the Unit 1 driveway without crossing Defendant's land. Defendant further disputes that any of Gerbode's use related to access east of the barn or to the area that is now

---

[1] Defendant argues the Gerbode declaration is problematic because it not an affidavit sworn before a notary. This is incorrect. 4 V.S.A. §27b.

Unit 2. Defendant characterizes any incidental crossing near the Contested Area as tolerated or neighborly use, insufficient to establish the scope of the easement.

These disputed facts – when the Unit 1 driveway was constructed, when and where Gerbode crossed the Contested Area, and whether that use reflected the parties' shared understanding at the time of the 1985 Deed – are material to the question of the parties' intent in the 1985 deed and cannot be resolved on summary judgment.

Accordingly, the Court denies summary judgment for both parties on the express easement claim.

B. Prescriptive Easement

To establish a prescriptive easement, a plaintiff's use of the land must have been "open, notorious, continuous for fifteen years, and hostile or under claim of right." *Schonbek v. Chase*, 2010 VT 91, ¶ 8, 189 Vt. 79 (quoting *Greenberg v. Hadwen*, 145 Vt. 112, 114 (1984)). Additionally, the scope of the easement sought by the plaintiff must be within the range of prior use claimed by the easement holder. *Id.* at ¶ 9.

Here, Plaintiffs claim a prescriptive easement over the Contested Area north of Unit 2 and east of the barn/garage for use as a driveway. To succeed, Plaintiffs would need to demonstrate that this area was used as a driveway continuously for fifteen years without Defendant's permission. The undisputed facts do not support this claim.

Plaintiffs fail to meet the continuous-use requirement. Even crediting Gerbode's disputed claimed use of the Contested Area, Gerbode owned the conveyed property for only eleven years, from the 1985 Deed until he conveyed Unit 2 to the Seiples in 1996. This period falls short of the fifteen-year statutory requirement. Because Gerbode did not own the property consecutively for fifteen years before selling to the Seiples, his use alone cannot establish a prescriptive easement.

Although Gerbode continued to own Unit 1 until approximately 2020, his post-1996 use of the Contested Area, even if credited, would inure to Unit 1's benefit, not Unit 2's. Nor can Plaintiffs establish the fifteen-year period by tacking Gerbode's pre-1996 use to that of subsequent Unit 2 owners. The Seiples, who succeeded Gerbode as owners of Unit 2, did not continue the claimed use; rather, they accessed Unit 2 exclusively via the Common Area from Unit 1 and used the Contested Area only with Defendant's express permission. This break in hostile, continuous use defeats any tacking argument.

The Seiples did not use Building #7 to park vehicles and did not permit anyone to access Unit 2 through the Contested Area. Their occasional access to Building #7 through the Contested Area was limited to collecting trash and winter boat storage, and was done only with the express permission of the Quintins. The mowing of the Contested Area during this period was likewise permissive. Since the Seiples made these uses with Defendant's permission, they cannot be characterized as hostile.

The only periods during which the owners of Unit 2 used the Contested Area above Unit 2 as a driveway were in 2017–2018, when Penelope Gerbode installed unpermitted driveways that were subsequently removed, and in 2023–2024, when a temporary driveway was constructed for Plaintiffs' home construction. In both instances, Defendant confronted the use; in the latter, Defendant issued a formal Notice Against Trespass. Neither period approaches the fifteen-year statutory requirement.

Even viewing the evidence in the light most favorable to Plaintiffs as the non-moving party, there is no fifteen-year period during which the Contested Area east of the barn was continuously used as a driveway without permission. Accordingly, the Court grants summary judgment for Defendant on the prescriptive easement claim.

## C. Implied Easement by Grant

An implied easement by grant arises when a common owner splits property, and it is presumed that the property conveyed is as it existed at the time of conveyance. To establish an implied easement by grant, the party must show: (1) common ownership between parcels and subsequent separation; (2) an obvious benefit to the dominant estate from the servient estate at the time of conveyance; (3) the common owner used the property in an altered condition for a sufficient period before the conveyance to indicate the change was meant to be permanent; and (4) reasonable necessity for the easement. *Chevalier v. Tyler*, 118 Vt. 448, 450–51 (1955).

Here, while there was common ownership (Quintin owned the entire parcel before the 1985 conveyance) and an obvious benefit to the dominant estate, Plaintiffs fail to satisfy the third element. To meet this requirement, Plaintiffs must demonstrate that the common owner, Quintin, used the area east of the barn as a driveway or vehicular access point before the 1985 conveyance for a sufficient period to indicate that the change was intended to be permanent.

Plaintiffs have presented no evidence that Quintin used the area east of the barn, the area where Plaintiffs seek to construct a driveway, as a vehicular access point before the 1985 Deed. The 1985 survey, created at or near the time of the deed, does not depict any driveway to the east of the barn. Plaintiffs speculate that Quintin may have crossed the Contested Area to access the Fisher Camp. Still, there is no evidence supporting this assertion, and it is equally plausible that Quintin accessed the Fisher Camp elsewhere, since there is no evidence of where exactly the Fisher Camp was located.

The documentary record also supports this conclusion. No plat or survey associated with the property depicts a driveway from Briarcliff Drive to Unit 2 east of Building #7, and Plaintiffs admit they are unaware of any such plat. Moreover, the original 1996 Condominium Declaration provided access to Unit 2 via the Unit 1 driveway and the Common Area, not through the Contested Area, further demonstrating that the understood means of access did not include a driveway across the Contested Area to Unit 2.

Because Plaintiffs have failed to present evidence that the common owner used the area in question as a driveway before the 1985 conveyance, the claim for an implied easement by grant fails as a matter of law. Accordingly, summary judgment is granted for the Defendant on this claim.

## ORDER

For the foregoing reasons, it is hereby ORDERED:

1. Summary Judgment is DENIED for both parties on the express easement claim.

2. Summary Judgment is GRANTED for Defendant on Plaintiffs' prescriptive easement claim.

3. Summary Judgment is GRANTED for Defendant on Plaintiffs' implied easement by grant claim.

Electronically signed on April 10, 2026, pursuant to V.R.E.F. 9(d).

Navah C. Spero
Superior Court Judge