#25566-a-JKK
**2010 S.D. 100**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

NEW LEAF, LLC, ROBERT J.
DVORAK and VIANNA JUNE DVORAK,       Plaintiffs and Appellants,

v.

FD DEVELOPMENT OF BLACK HAWK
LLC and FAMILY DOLLAR STORES
OF SOUTH DAKOTA, INC.,       Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JEROME A. ECKRICH, III
Judge

\* \* \* \*

JOHN K. NOONEY
AARON T. GALLOWAY of
Nooney, Solay & Van Norman, LLP       Attorneys for plaintiffs
Rapid City, South Dakota       and appellants.

RODNEY W. SCHLAUGER
ERIC J. PICKAR of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP       Attorneys for appellee
Rapid City, South Dakota       FD Development.

JASON M. SMILEY of
Gunderson, Palmer, Nelson & Ashmore, LLP       Attorneys for appellee
Rapid City, South Dakota       Family Dollar.

\* \* \* \*

ARGUED ON OCTOBER 6, 2010

OPINION FILED **12/22/10**

#25566

KONENKAMP, Justice

[¶1.]     The ultimate question here is whether the circuit court abused its discretion in declining to enjoin a business from selling grocery items in violation of a restrictive covenant.  In balancing the equities, the court ruled that the landowners failed to establish irreparable harm and that the hardship suffered by the business would be disproportionate to the benefit to be gained by the landowners.  We find no abuse of discretion in this ruling.

## Background

[¶2.]     In 1982, Robert and Vianna Dvorak (Dvoraks) purchased a grocery store and fueling station called BJ's Country Store in Black Hawk, South Dakota. Sometime thereafter the Dvoraks retired and, through a stock purchase agreement, sold their interest in BJ's Country Store to Country Stores, Inc., an entity owned by Raymond and Roberta Dvorak, their son and daughter-in-law.  Raymond and Roberta leased the real property from the Dvoraks.

[¶3.]     In 1995, the Dvoraks purchased a 20-acre parcel, called BJD Subdivision, located one block from BJ's Country Store.  They platted and subdivided the land into 19 commercial lots and executed a "Declaration of Restrictions and Covenants to Run With Land BJD Subdivision."  The declaration contained a properly-recorded restrictive covenant stating that "[n]o lot shall be used for the sale of grocery items or gasoline."  The Dvoraks created this restrictive covenant to "secure their retirement and the investment of the Children."  By 1999, the Dvoraks had sold all 19 lots.  In January 2006, they sold the land beneath BJ's

Country Store to Raymond and Roberta for $1.2 million, with $700,000 paid at the time of closing and the balance secured by a promissory note and mortgage.

[¶4.]     In April 2006, Venture, LLC, executed a letter of intent indicating an interest in purchasing, constructing, and leasing lot 17 of the BJD Subdivision for a Family Dollar Store.  Venture is the managing member of FD Development.  In May 2006, FD Development purchased lot 17.  The seller gave FD Development a title insurance commitment, which included the covenant prohibiting the sale of grocery items.  Nonetheless, Venture represented to Family Dollar that there were "no title restrictions or restrictions in other leases that limit the type of products that tenants (Family Dollar Store) may sell on the Premises."

[¶5.]     In August 2006, Venture and Family Dollar Stores of South Dakota, Inc., executed a lease agreement.  Construction of the store began in October.  In December, Raymond and Roberta sent a letter to FD Development warning of the restrictive covenant against the sale of grocery items.  In February 2007, Family Dollar opened for business under the lease agreement and began selling, according to the Dvoraks, grocery items in violation of the restrictive covenant.

[¶6.]     The Dvoraks brought suit for injunctive relief against FD Development and Family Dollar (defendants).  The circuit court denied the Dvoraks' request for a preliminary injunction.  The Dvoraks thereafter amended their complaint adding as plaintiffs Country Stores, Inc., Raymond and Roberta, and New Leaf Development, a property owner in BJD Development.  Family Dollar cross claimed against FD Development alleging that FD Development failed to notify it of the restrictive covenant.  In June 2007, the Dvoraks moved for summary judgment, seeking a

permanent injunction and declaratory relief against Family Dollar's sale of grocery items. Defendants also moved for summary judgment.

[¶7.] Following a hearing, the circuit court ruled that the restrictive covenant was validly created, but that only New Leaf and the Dvoraks had standing to enforce the covenant and dismissed the remaining plaintiffs. Related to enforceability, the court found that the Dvoraks did not waive their right to enforce the covenant. The court further held as a matter of law that "the covenant at issue does not violate public policy or otherwise unreasonably restrain the grocery trade in the Black Hawk market." But the court could not determine whether a permanent injunction should issue, and accordingly, ordered a trial on the merits.

[¶8.] After the trial, the court issued findings of fact and conclusions of law. It found that defendants knew, or should have known, of the covenant before they purchased and developed the land. It further found that "[a]t the trial, no owner of land within the BJD Subdivision testified in favor of enforcing the prohibition against the sales of groceries, or made an offer of proof to enforce the same." The restriction, the court noted, "was intended to limit competition with BJ's and thereby strengthen the security of [the Dvoraks'] retirement nest egg and to provide Raymond and Roberta an incentive and opportunity to continue the family grocery business." Limiting competition, the court concluded, was not unreasonable "per se." Yet the court found that "[n]o evidence was presented at any juncture of the case that the restrictive covenant tended substantially to restrict competition in the relevant market." Moreover, the court found no evidence that "any BJD Subdivision owners are harmed by the operation of Family Dollar" or that the

Dvoraks, Raymond, or Roberta experienced "damage, hardship, or financial loss[.]" The court concluded that "if an injunction would issue, [the Dvoraks] would not benefit, as no additional income stream (payments) would be made."

[¶9.] In addressing the defendants' actions in ignoring the covenant, the court deemed it immaterial whether Family Dollar actually knew of the covenant: "Any reasonably competent businessman, land developer, or real estate purchaser knows or should have known that a pre-closing title search is essential and elementary." Further, according to the court, "the evidence demonstrated that either FD [Development] or Family Dollar Store blithely ignored the covenant and failed to execute 'due diligence' prior to closing and made a conscious business decision to plow forward despite due and adequate notice that doing so would likely result, at a minimum, in a lawsuit." But the court did not believe the defendants' actions amounted to bad faith.

[¶10.] Finally, balancing the equities, the court found that "the hardship to be suffered by [defendants] and other property owners, past, present, or future, is disproportionate to the benefit gained by the [the Dvoraks, or Raymond and Roberta]." No one, according to the court, enforced the covenant until Family Dollar arrived and "[a]ny business, now or later, which sells so much as a potato chip could be subject to an arbitrary enforcement." The court also ruled that the phrase "grocery items" is overbroad and, "as demonstrated in this case," subjected landowners in the subdivision to arbitrary enforcement. Also in balancing the equities, the court concluded that "[t]he covenant unreasonably restrains trade and

unreasonably restrains alienability." The court held that a permanent injunction was not an appropriate remedy and denied the Dvoraks their requested relief.

[¶11.] The Dvoraks appeal. They contend that the circuit court erred as a matter of law because it stated in its conclusions of law that the covenant unreasonably restrains trade and alienability and declared that the phrase "grocery items" as used in the covenant is overbroad. They further assert that the court erred when it denied a permanent injunction.

## Standard of Review

[¶12.] The parties dispute the applicable standard of review. The Dvoraks contend that our standard of review of the court's decision to deny injunctive relief is de novo because the court issued erroneous conclusions of law. Defendants, on the other hand, claim that we review a denial of an injunction for an abuse of discretion. While defendants are correct — we review a court's decision to grant or deny injunctive relief for an abuse of discretion — we still review the court's conclusions of law de novo and findings of fact under the clearly erroneous standard. *See Harksen v. Peska*, 1998 S.D. 70, ¶ 12, 581 N.W.2d 170, 173 (quoting *Maryhouse, Inc. v. Hamilton,* 473 N.W.2d 472, 474 (S.D. 1991)).

## Analysis and Decision

[¶13.] The Dvoraks maintain that because the court concluded, by way of summary judgment, that the restrictive covenant is valid and enforceable and does not unreasonably restrain trade or alienability, the court erred when it issued a contradictory ruling following the trial. The summary judgment decision stated: "the covenant at issue does not violate public policy or otherwise unreasonably

restrain the grocery trade in the Black Hawk market area." Following trial, the court found: "the covenant unreasonably restrains trade and unreasonably restrains alienability."

[¶14.] There may or may not be an adequate explanation for the circuit court's conflicting rulings. But even if the court erred when it held that the covenant was an unreasonable restraint on trade and alienability, that error is not, by itself, grounds for reversing the court's decision denying a permanent injunction. *See Horne v. Crozier*, 1997 S.D. 65, ¶ 5, 565 N.W.2d 50, 52 (citations omitted). Nor is it dispositive whether the court's overbroad ruling on the phrase "grocery items" was correct. "'Where a judgment is correct, this [C]ourt will not reverse although it was based on incorrect reasons or erroneous conclusions.'" *Poindexter v. Hand Cnty. Bd. of Equalization,* 1997 S.D. 71, ¶ 16, 565 N.W.2d 86, 91 (citations omitted).

[¶15.] Ultimately, the question is whether an injunction should have been granted even if the covenant was valid and enforceable. Several guiding factors assist courts in deciding whether to grant or deny injunctive relief. *Knodel v. Kassel Twp.*, 1998 S.D. 73, ¶ 9, 581 N.W.2d 504, 507 (citations omitted). Those include: "1) Did the party to be enjoined cause the damage? 2) Would irreparable harm result without the injunction because of lack of an adequate and complete remedy at law? 3) Is the party to be enjoined acting in bad faith or is the injury-causing behavior an 'innocent mistake'? 4) In balancing the equities, is the 'hardship to be suffered by the [enjoined party] . . . disproportionate to the . . . benefit to be gained by the injured party'?" *Id.* (citations omitted).

[¶16.]        The Dvoraks argue that the court improperly balanced the equities in defendants' favor.  The Dvoraks emphasize that their covenant was validly created and defendants made the conscious decision to ignore it.  Defendants should be enjoined, the Dvoraks argue, because otherwise "[a]n entity with enough financial wherewithal and cavalier attitude may bypass any restrictive covenant that does not comply with its business plan in the State of South Dakota."  Indeed, as the circuit court noted, defendants "blithely ignored the covenant and failed to execute a decent 'due diligence' prior to closing and made a decision to plow forward despite due and adequate notice that doing so would likely result, at a minimum, in a lawsuit."  Yet the court ruled that defendants did not act in bad faith and there is no evidence to suggest the court erred in this conclusion.  Further, in balancing the equities, the court considered that until Family Dollar arrived the Dvoraks made no attempt to enforce the covenant against any other entity arguably selling grocery items.

[¶17.]        There is no dispute that defendants ignored the validly-created restrictive covenant.  Still, the court found no evidence that the Dvoraks or their children were harmed by Family Dollar's actions.  Moreover, the court found no evidence that irreparable harm would result if Family Dollar continued to sell grocery items.  The Dvoraks claim that Family Dollar's sale of grocery items will impair their retirement plan, as "[t]he latent effects of Family Dollar's action may not manifest themselves for some time."  But, as the court found, and the Dvoraks do not dispute, they have "continued to receive the retirement income they expected despite the competition from Family Dollar Store."  Without any evidence of how

and to what extent the Dvoraks will be harmed, the court's conclusion that the Dvoraks failed to prove irreparable harm was not erroneous.

[¶18.]     An injunction, the circuit court held, would impose an undue hardship on Family Dollar as compared to the benefit to be gained by the Dvoraks.  The court stated, "Evidence was submitted that the loss of Family Dollar Store, at least in the near term, would decrease the customer traffic to businesses in the BJD Subdivision which depend upon customer traffic for sales."  Also, according to the court, "[t]here is no competent, quantifiable evidence of the amount of revenue, if any, BJ's [Country Store] has lost as a result of Family Dollar Store."  Just as importantly, the court concluded that "if an injunction would issue, the parents would not benefit, as no additional income stream (payments) would be made" and "the children (or their related entities) failed to make their case that they have been harmed or damaged."  We see no abuse of discretion in denying injunctive relief.

[¶19.]     Affirmed.

[¶20.]     GILBERTSON, Chief Justice, and ZINTER, MEIERHENRY and SEVERSON, Justices, concur.