#28954-a-SRJ
**2020 S.D. 27**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KATRINE B. HELLEBERG,
SYLVIA J. COX and
TRACY K. HEETER,                                Plaintiffs and Appellees,

    v.

THOMAS L. ESTES and
WANDA L. ESTES,                                 Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JANE WIPF PFEIFLE
Judge

* * * *

FRANK A. BETTMANN of
Bettmann Hogue Law Firm, Prof. LLC
Rapid City, South Dakota                        Attorneys for plaintiffs and
                                                appellees.


BRIAN L. UTZMAN of
Smoot & Utzman, P.C.
Rapid City, South Dakota                        Attorneys for defendants and
                                                appellants.

* * * *

CONSIDERED ON BRIEFS
MARCH 17, 2020
OPINION FILED **05/13/20**

JENSEN, Justice

[¶1.]     Thomas Estes owns Lots 3 and 4R2 in Estes Subdivision located in Pennington County, South Dakota.  Katrine Helleberg owns Lot 2R within the Estes Subdivision.  Tracy Heeter and Sylvia Cox (Heeter/Cox) live in a home located on Lot 2R.  Sometime after 2008, hostilities developed between Estes and Heeter/Cox concerning Estes' use of a road (Easement Road) that crossed Lot 2R.

[¶2.]     Unable to resolve their differences, the parties filed multiple claims against one another in this action.  Several of the claims were settled or resolved on summary judgment.  The circuit court heard and resolved the remaining claims during a bench trial.  Estes appeals the circuit court's following determinations: (1) that a limited private easement granted Estes the right of access across Lot 2R solely to repair or install water lines; and (2) that a prescriptive easement did not exist in favor of Estes for the use of the Easement Road on Lot 2R.  We affirm the circuit court on both issues.

## Facts and Procedural History

[¶3.]     Estes Subdivision is located on 40 acres of land that had been owned by Estes' parents since at least 1959, when they moved into a home on the property.  In 1977, Estes' father decided to subdivide the 40 acres for the purpose of selling residential lots.  Lot 2, consisting of 2.99 acres, was platted and sold to Eugene and Linda Mikuska (Mikuskas) in 1977.

[¶4.]     The same year, Estes' father drilled a well on Lot 4R2 and installed a water line to supply water to residences within Estes Subdivision.  The water line roughly followed the path of the Easement Road.  In 1985, the Estes family imposed

restrictive covenants for the lots within Estes Subdivision by signing a Declaration of Protective and Restrictive Covenants (Covenants).[1] The Covenants burdened the lots within Estes Subdivision with the following access easement: "The right of access to repair or install the water lines and to build an access road and use said access road over the water line is hereby granted by owner."

[¶5.] In 1991, Mikuskas conveyed Lot 2 to John and Phyllis Cram by contract for deed. In 2002, Lot 2 was replatted as Lot 2R. The replat added approximately seven additional acres as part of Lot 2R. Estes deeded Lot 2R to the Crams by warranty deed in 2003. Lot 2R was adjacent to the south of Lot 4R2. In 2008, Heeter/Cox purchased Lot 2R from the Crams. Heeter/Cox conveyed by quitclaim deed Lot 2R to Helleberg, Cox's daughter, on July 2, 2008, but Heeter/Cox continued to reside on the property.

[¶6.] Estes testified that the Easement Road had been used for various purposes from the time his parents moved onto the land in addition to using the Easement Road for the repair and installation of the water lines. It is clear that when Lot 2 was replatted and expanded from 2.99 acres to 10 acres in 2003, the Easement Road was located on replatted Lot 2R. However, the evidence was disputed whether the Easement Road crossed Lot 2 during the period from 1977 until 2003 prior to the replat. Heeter/Cox assert that the Easement Road was located on land owned by Estes until the replat in 2003, when Lot 2 was expanded

---

1.  Among other provisions, the Covenants provided that Estes was to operate and maintain the water supply system and water lines for the lot owners in Estes Subdivision. Estes charged a flat rate for the first 3,000 gallons used and an additional fee for every additional 1,000 gallons used. Estes also had the right to raise the charges as necessary to meet operating costs.

to Lot 2R and conveyed to the Crams. Estes claims, to the contrary, that the Easement Road was located on Lot 2 in 1977 when the lot was originally platted and he did not thereafter own the land underlying the portion of the Easement Road on Lot 2. A survey done on January 1, 2018 suggests that the Easement Road may in fact have crossed the former Lot 2.[2]

[¶7.] On June 6, 2013, Heeter/Cox and Helleberg filed a complaint against Estes. The complaint sought a declaratory judgment that the water system in the Estes Subdivision was not owned by Estes and that Estes was not entitled to the monies generated from the water system. The complaint also requested the appointment of a receiver and injunctive relief. On July 3, 2013, Estes filed an answer and counterclaim seeking a declaration concerning Estes' right of access to use Lot 2R and the Easement Road on Lot 2R, and a declaration that Estes owned the water system. Estes also counterclaimed for assault and battery.[3] The assault and battery claim was bifurcated from the other claims and eventually settled.

[¶8.] On December 30, 2014, the circuit court granted Estes' motion for partial summary judgment, determining that Estes owned the water system, the

---

2. The circuit court did not make a specific finding on the question of whether the Easement Road crossed Lot 2 prior to the 2003 replat creating Lot 2R. However, even if it did, the court found that Estes failed to show that his use of the Easement Road was adverse to the prior owners. *See Rotenberger v. Burghduff,* 2007 S.D. 19, ¶ 8, 729 N.W.2d 175, 178 (quoting *Rancour v. Golden Reward Mining Co.,* 2005 S.D. 28, ¶ 7, 694 N.W.2d 51, 54) ("To find that a prescriptive easement exists the property must be used "in a manner that is hostile or adverse to the owner.").

3. During one of these quarrels between the parties, Estes claimed that Heeter slammed his foot in a car door, injuring his foot. This alleged incident became the basis for Estes' assault and battery claim.

revenues generated from it, and that Estes had the right to control the water system. Heeter/Cox did not appeal this determination.

[¶9.] On November 27, 2018, the circuit court held a bench trial on the remaining issues, including Estes' easement rights on Lot 2R. At the conclusion of the trial, the court orally ruled that the Covenants granted Estes a limited private easement to access Lot 2R to install and repair water lines. The court also determined that Estes did not have a prescriptive easement for the Easement Road that crossed Lot 2R. Estes appeals from the written judgment incorporating the court's rulings.[4]

## Analysis and Decision

[¶10.] "The interpretation of a restrictive covenant is a legal question which we review de novo." *Harlan v. Frawley Ranches PUD Homeowners Ass'n, Inc.*, 2017 S.D. 54, ¶ 6, 901 N.W.2d 747, 750. We review "'declaratory judgments as we do any other order, judgment, or decree' giving no deference to a circuit court's conclusions of law under the de novo standard of review." *In re Pooled Advocate Trust*, 2012

---

4. Estes argues for the first time in his reply brief that an implied easement was established on this record. *See Thompson v. E.I.G. Palace Mall, LLC*, 2003 S.D. 12, ¶ 13, 657 N.W.2d 300, 305 ("[T]he party claiming the existence of an implied easement must show that it is necessary . . . ."). The circuit court briefly referenced in its ruling that an argument had been made for an implied easement, but the court determined there was no showing of necessity or permanency. Further, Estes failed to plead a claim for an implied easement in his counterclaim. Estes also failed to raise appellate error concerning an implied easement in his initial brief to this Court. Therefore, the issue is not properly before this Court on appeal. *See Ellingson v. Ammann*, 2013 S.D. 32, ¶ 10, 830 N.W.2d 99, 102 (quoting *Agee v. Agee*, 1996 S.D. 85, ¶ 21 n.4, 551 N.W.2d 804, 807 n.4) ("A party may not raise an issue for the first time on appeal, especially in a reply brief when the other party does not have the opportunity to answer.").

S.D. 24, ¶ 20, 813 N.W.2d 130, 138 (quoting *Fraternal Order of Eagles No. 2421 of Vermillion v. Hasse*, 2000 S.D. 139, ¶ 8, 618 N.W.2d 735, 737). However, "[f]indings of fact . . . may not be set aside unless clearly erroneous . . . ." *Estate of Henderson v. Estate of Henderson*, 2012 S.D. 80, ¶ 9, 823 N.W.2d 363, 366 (quoting SDCL 15-6-52(a)).

> 1. *Whether the circuit court erred when it limited the private easement granted in the Covenants to the installation and repair of water lines.*

[¶11.] Estes claims that the circuit court erred in its determination that the private easement grants a right of access across Lot 2R solely for the repair or installation of the water lines. Estes urges that the circuit court failed to give effect to all of the provisions of the Covenants by ignoring the language that states, "to build an access road and use said access road over the water line." Appellees argue that the circuit court did not err in restricting Estes' use of the easement because the limitation solely for use to repair and install water lines was clearly and expressly provided for in the 1985 Covenants.

[¶12.] We apply the rules of contract interpretation to interpret the Covenants. *See Jackson v. Canyon Place Homeowner's Ass'n, Inc.*, 2007 S.D. 37, ¶ 9, 731 N.W.2d 210, 212. Here, the parties acknowledge that the Covenants are not ambiguous. We agree. The language of the Covenants is unambiguous when viewed objectively and in the context of the entire Declaration of Protective and Restrictive Covenants. "[A] contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Coffey v. Coffey*,

2016 S.D. 96, ¶ 9, 888 N.W.2d 805, 809 (quoting *Dowling Family P'ship v. Midland Farms*, 2015 S.D. 50, ¶ 13, 865 N.W.2d 854, 860).

[¶13.]     "When the meaning of contractual language is plain and unambiguous, construction is not necessary." *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 14, 709 N.W.2d 350, 354 (quoting *Pesicka v. Pesicka*, 2000 S.D. 137, ¶ 6, 618 N.W.2d 725, 726).  Instead, "to ascertain the terms and conditions of a contract, we must examine the contract as a whole and give words their plain and ordinary meaning." *Coffey*, 2016 S.D. 96, ¶ 8, 888 N.W.2d at 809 (internal quotation marks and citations omitted).  Further, when the language of a restrictive covenant is unambiguous, "its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature." *Jackson*, 2007 S.D. 37, ¶ 9, 731 N.W.2d at 212 (quoting *Halls v. White*, 2006 S.D. 47, ¶ 7, 715 N.W.2d 577, 580-81).

[¶14.]     The plain language of the Covenants provides for a limited easement on the lots within Estes Subdivision to: (1) repair or install water lines; and to (2) build an access road and use said access road over the water line.  The language of the easement is included within the provisions dealing exclusively with the water system.  These provisions detail the rights and duties related to the water line and water system.  Further, the only reference to the building and use of a road within Estes Subdivision is in relation to the water lines.  There is no language expressing an intention to allow the expanded use of the Easement Road for other purposes.

[¶15.]     Estes argues that the circuit court impermissibly rendered the language "to build an access road and use said access road over the water line . . ."

meaningless. Estes asserts that the words "and use said access road" grants him the right to use the Easement Road for any purpose. However, the language, when read within the whole of the Covenants, indicates that the sole purpose of the easement is to grant access to repair or install the water lines within the Estes Subdivision.

[¶16.] As the circuit court determined, "if, in fact, the Esteses had intended at any time that the land would be used to haul sticks off or tree limbs or 10-foot pieces of pipe, they most certainly would have included it in the declaration of the restrictive easement." The circuit court properly limited the easement to repairing or installing water lines consistent with the plain language of the Covenants.

> 2. *Whether the circuit court erred in its determination that the evidence did not satisfy the elements for a prescriptive easement.*

[¶17.] The circuit court concluded that Estes failed to prove the elements for a prescriptive easement by clear and convincing evidence. Estes argues that the circuit court erred because he and his predecessors in interest used the Easement Road and have treated it as their own without Appellees, or their predecessors', consent or permission. Appellees assert that a prescriptive easement does not exist because Estes had actual title to the land containing the easement for most of the required statutory period of twenty years. Alternatively, Appellees argue that Estes had permissive use of the Easement Road consistent with the Covenants and

the prior owners of Lot 2R and did not openly or continually use the Easement Road in a way that was hostile to the owners for twenty years.[5]

[¶18.]        To prove the existence of a prescriptive easement, Estes must satisfy "a two-part test by clear and convincing evidence." *Rotenberger*, 2007 S.D. 19, ¶ 8, 729 N.W.2d at 178. First, Estes must show "an open, continued, and unmolested use of the land in the possession of another for the statutory period of 20 years." *Id.* (quoting *Rancour v. Golden Reward Mining Co.*, 2005 S.D. 28, ¶ 7, 694 N.W.2d 51, 54). Second, Estes must show that the property is being used "in a manner that is hostile or adverse to the owner." *Id.* (quoting *Rancour*, 2005 S.D. 28, ¶ 7, 694 N.W. 2d at 54).

[¶19.]        To constitute an open and continuous use, "the adverse use must be made in such a way that a reasonably diligent owner would learn of its existence, nature, and extent. Sporadic and casual uses are generally not open nor notorious." *Hamad Assam Corp. v. Novotny*, 2007 S.D. 84, ¶ 11, 737 N.W.2d 922, 926 (quoting Restatement (Third) Prop. (Servitudes) § 2.17 (2000)). The continuous requirement does not require the claimant to have used the servient estate constantly or frequently. *Id.* ¶ 12. However, when the use is intermittent, "the question becomes whether such use is 'consistent with the normal use that an owner of the property would make and is sufficiently open and notorious to give notice to the owner of the

---

5.        Appellees also argue that Estes failed to raise a claim for prescriptive easement at trial. However, a claim for prescriptive easement was raised in Estes' counterclaim and the court addressed the claim in its oral ruling.

servient estate that the user is asserting an easement.'" *Id.* (quoting *Great N. Paper Co. v. Eldredge*, 686 A.2d 1075, 1077 (Me. 1996)).

[¶20.] The circuit court found that Estes' use of the Easement Road was not open, continuous, and unmolested for a period of twenty years. The record supports the circuit court's finding. Estes testified that the Easement Road was used for purposes beyond accessing the water system since the late 1950s, primarily to access a storage shed for the Aero Sheet Metal business. However, this use appears to have been sporadic after the 1990s. Since it is undisputed that Estes and his father owned the property underlying the road until Lot 2 was created in 1977, that is the first point in time from which Estes' claim of a prescriptive easement may be considered. Because the 1985 Covenants expressly created a permissive access and use of the Easement Road to repair and install the water lines, the only question is whether the road was openly and continuously used for other purposes after 1977 for a period of at least 20 years. Testimony was offered that it was extremely difficult for lot owners to know whether Estes' intermittent use of the Easement Road over the years was related to the water system permitted by the Covenants or for some other purpose. We will not modify property rights where the claimant's use of the servient estate is not open and notorious enough that the title holder may have insufficient notice of its unpermitted use of an adverse claim.

[¶21.] The record also supports the circuit court's finding that Estes failed to prove by clear and convincing evidence that his use of the property was "in the manner hostile or adverse to the owner." "In order to satisfy the adverse or hostile requirement, the use must be to the 'physical exclusion of all others under a claim of

right.'" *Rotenberger*, 2007 S.D. 19, ¶ 8, 729 N.W.2d at 178 (quoting *Thompson*, 2003 S.D. 12, ¶ 7, 657 N.W.2d at 304). "A prima facie case for a prescriptive easement is established 'by showing such an open and continuous use of another's land with the owner's knowledge, creating a presumption that such use is adverse and under a claim of right.'" *Id.* ¶ 9 (citation omitted). However, "a use that is merely permissive and not adverse to the interests of the property owner will not become a prescriptive easement." *Thompson*, 2003 S.D. 12, ¶ 7, 657 N.W.2d at 304. Here, there was evidence that Estes' use was not adverse to the owner of Lot 2 or Lot 2R for a period of twenty years because he and his predecessors in interest either owned the property where the Easement Road was located until it was replatted in 2003, or used the road with permission of the prior lot owners. Estes testified that when the property in Lot 2 and 2R was owned by the Crams from 1991 until 2008, he had their permission to use the Easement Road for any purpose he wanted. To the extent that the use by Estes was hostile to Appellees after they purchased the property in 2008, such use was for a period of less than twenty years.

[¶22.] "The elements that a claimant must prove to establish a prescriptive easement serve to protect the servient land owner by providing him with notice of a prescriptive right." *Hamad*, 2007 S.D. 84, ¶ 14, 737 N.W.2d at 926-27. The circuit court found the evidence in this case to be insufficient to prove that a prescriptive easement existed by clear and convincing evidence. Estes has failed to show that these findings were clearly erroneous. Thus, the circuit court properly concluded Estes failed to prove that a prescriptive easement existed.

[¶23.]        We affirm.

#28954

[¶24.]        GILBERTSON, Chief Justice, and SALTER, DEVANEY, Justices, and GILES, Circuit Court Judge, concur.

[¶25.]        GILES, Circuit Court Judge, sitting for KERN, Justice, disqualified.