#30511-aff in pt & rev in pt-SPM
**2024 S.D. 68**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SPRING CANYON PROPERTIES, LLC,           Plaintiff and Appellee,

  v.

CAL SD, LLC and TINA ROBERTS,           Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEFFREY R. CONNOLLY
Judge

* * * *

GARY D. JENSEN
CONOR P. CASEY of
Beardsley, Jensen & Lee, Prof. LLC
Rapid City, South Dakota            Attorneys for defendants and
                                   appellants.


GREGORY G. STROMMEN of
DeMersseman Jensen Tellinghuisen
    & Huffman, LLP
Rapid City, South Dakota            Attorneys for plaintiff and
                                   appellee.

* * * *

CONSIDERED ON BRIEFS
AUGUST 27, 2024
OPINION FILED **11/20/24**

#30511

MYREN, Justice

[¶1.]    Cal SD, LLC appeals a circuit court injunction.  We affirm in part and reverse in part.

## Factual and Procedural Background

[¶2.]    In October 2020, Cal SD, LLC purchased property at 9701 Clarkson Road outside of Rapid City.  The property, identified as Lot B, was sold as a single-family residence and included a restrictive covenant that regulated how the property could be maintained or improved.  The covenant also contained a section that expressly stated its purpose as:

> The undersigned owners desire to make the following declarations as to the limitations, restrictions, and uses of land described above and the limitations and restrictions of any structures placed on said land.  These declarations shall be binding on all parties and all persons claiming under the undersigned owners, and for the benefit of and limitations and restrictions on all future owners.  The parties acknowledge that the area covered by these covenants are for the express purpose of allowing the free movement of big horn sheep in their wilderness preserve and to preclude any new fencing of areas, to preclude any building and storage in the areas designated as "No Build" on the attached Exhibit A and to preclude any offensive colors on buildings.  The purpose of this Covenant is to preserve open areas for wildlife migration and health, to preserve the general theme of the area and to provide for no build and no storage areas.

[¶3.]    The covenant generally prohibited new construction, including fencing, within the "no build" areas of the property.  However, the restrictive covenant included a specific exception related to Lot B, which read:

> Other than as described here no new fencing of any kind shall be constructed or improved on the land.  Lot B shall be permitted to have a fenced area with a maximum dimension of 20' by 50' for cultivated gardening purposes (flowers or "victory garden") within 10' of the existing water hydrant in the designated area

-1-

> marked by an "X" within the "no build zone" on the attached Exhibit A. Any fencing shall be wire mesh appropriate for protection of the growing areas and preserving visibility. In the event any such garden area is not maintained the fencing and any bedded areas shall be removed and grass restored.

The covenant was filed with the Pennington County Register of Deeds, and neither party disputes its validity as a restrictive covenant.

[¶4.] Tina Roberts subsequently acquired sole control over Cal SD in April 2021. Roberts began making a garden on Lot B in the summer of 2022. Larry Teuber, another property owner, informed Roberts that her garden was not within the required distance of the fire hydrant and that her garden plot exceeded the permitted parameters. Teuber also "[s]uggest[ed] [Roberts] review covenants and county code relative to activity in 'no build' area."* Roberts then shifted the plot closer to the fire hydrant and reduced the size of the garden.

[¶5.] Once Roberts had the boundary of this new garden fixed, she placed fence posts around the border of the garden. The fence posts, some of which measured taller than eight feet, were then wrapped in wire mesh. Roberts also situated trusses across the top of the fence posts, to which she fastened protective hail netting. These trusses overhung the perimeter of the garden. The completed garden structure is pictured below:

---

* Pennington County allows fences over eight feet but requires a building permit to construct such a fence. Pennington Cnty., S.D., Zoning Ordinances § 506(B)(3)(b).



[¶6.]      When Roberts was constructing her garden fence, Teuber sent further notice that the garden structure violated the restrictive covenant. In her responsive email to Teuber, Roberts stated that:

> We have consulted with Penn Co Planning Department and understand the building permit requirements. We also understand no overhead trusses which created a building permit situation. That being said, my labor will not be able to remove the overhead until he returns from a trip this week to other properties out of state. Which means by next Friday, August 26th, we should have resolved/removed the overhead. We will continue toward the less than 8' fence compliance.

[¶7.]      Teuber informed Roberts that legal action would be taken to enforce the restrictive covenant if the violation was not resolved. Rather than bringing the

fence into compliance with the restrictive covenant, Roberts applied for a building permit with the County. The completed application marked the type of construction as an "Accessory Structure(s)." However, the application did not mention fence height.

[¶8.] Spring Canyon Properties, LLC (Spring Canyon) is the owner of neighboring property subject to the same restrictive covenant. On November 22, 2022, Spring Canyon filed a complaint in circuit court against Roberts and Cal SD (collectively "Roberts"), alleging Roberts' garden structure was prohibited by the restrictive covenant. The complaint requested "an injunction preventing [Roberts] from continuing construction on the real property in violation of the Restrictive Covenants and ordering that [Roberts] remove the offending structure and restore the grass to comply with the Restrictive Covenants[.]" Roberts subsequently filed a motion for summary judgment, arguing that the restrictive covenant "unambiguously allows for Roberts to build a fenced garden" and that "there is no genuine issue of material fact." Spring Canyon opposed Roberts' motion for summary judgment. After a hearing, the circuit court denied the motion for summary judgment, concluding there were material issues of fact still in dispute.

[¶9.] Following further discovery, Spring Canyon filed a motion for partial summary judgment "on the issue of liability alleged in the Complaint." Spring Canyon asserted that there were no genuine issues of material fact as to the structure of the garden fence and whether it violated the restrictive covenant. In response, Roberts renewed her motion for summary judgment, arguing that she "has complied with the specific conditions that the Restrictive Covenants allow" and

that "[t]here are no questions of fact regarding the issues Plaintiff brings forth regarding the Restrictive Covenants or Roberts's fenced garden."

[¶10.] At the hearing on the cross-motions for summary judgment, Spring Canyon argued that the garden structure operated as a building rather than as a fence and, therefore, violated the restrictive covenant. As support, Spring Canyon asserted that "the defendants built a fence around a garden in a no build area, but they didn't stop with building a fence. To that fence was added a main center beam and main center beams are not part of a fence under any definition of a fence. . . . Fences do not have trusses or joists connecting an overhead beam and the walls of the fence." Spring Canyon also pointed out that the overhead structures exceed the permitted 20-foot width of the garden.

[¶11.] In response, Roberts argued that the garden fence exception did not expressly prohibit trusses and further asserted that the trusses and overhead netting protect the garden. Roberts also argued that the trusses and hail netting did not transform the structure into a building and did not constitute a roof because natural elements (rain, snow, wind, sunlight, etc.) are still able to pass through. She also asserted that she obtained the building permit to comply with the fence height regulations outlined in the county zoning ordinances.

[¶12.] The circuit court granted Spring Canyon's motion for partial summary judgment and denied Roberts' renewed motion for summary judgment, concluding that:

> I think this is a structure. I think it's construction that's in
> violation of Paragraph 6, and you have fencing that, I think,
> goes beyond what is permitted in the exceptions in Article III.
> It's - - I - - I don't think it preserves visibility, and I do not - - I

> think it's plain that a roof which - - or upper structure, whatever you want to call it, that goes beyond fencing.

The circuit court ordered Roberts to "remove all overhead components of the building structure in the 'No Build' zone" and "that the Defendants are enjoined from rebuilding or placing any new structure in the 'No Build' zone that exceeds 8' in height as measured from ground level or violates the Restrictive Covenants[.]" Roberts appeals.

### *Whether the circuit court erred in concluding the garden structure violated the restrictive covenant.*

[¶13.] Roberts argues that the circuit court erred in granting the injunction because the restrictive covenant permits a garden fence and that her garden fence complied with the restrictions found in the covenant exception. Further, she contends that we must construe the covenant strictly in her favor.

[¶14.] "We review grants of summary judgment under the de novo standard of review." *Wilson v. Maynard*, 2021 S.D. 37, ¶ 14, 961 N.W.2d 596, 600 (citation omitted). "We decide whether genuine issues of material fact exist and whether the law was correctly applied[, and w]e will affirm a circuit court's decision so long as there is a legal basis to support its decision." *Id.* (alteration in original) (citation omitted). Here, there are no unresolved factual disputes regarding the nature of this fence. The parties agree that the structure is fenced with wire mesh, is supported by wooden posts, and has overhead trusses supporting the hail netting. They also agree on the dimensions of the structure, including the fact that the structure measures taller than eight feet. Both parties also assert that the language in the restrictive covenant, specifically the garden fence exception, is

unambiguous. However, they disagree about whether Roberts' structure fits within the plain and ordinary meaning of the term "fence."

[¶15.] "The interpretation of a restrictive covenant is a legal question which we review de novo." *Helleberg v. Estes*, 2020 S.D. 27, ¶ 10, 943 N.W.2d 837, 841 (citation omitted). "The interpretation of a restrictive covenant involves the same rules of construction for contract interpretation." *Jackson v. Canyon Place Homeowner's Ass'n, Inc.*, 2007 S.D. 37, ¶ 9, 731 N.W.2d 210, 212 (citation omitted).

[¶16.] Although the restrictive covenant here does not define "fence," this Court has said that "failing to define terms does not automatically result in an ambiguity." *Wilson*, 2021 S.D. 37, ¶ 22, 961 N.W.2d at 602 (citation omitted). "An undefined term in a restrictive covenant 'is not ambiguous if the term has a plain and ordinary meaning and that meaning can be defined.'" *Id.* (citation omitted). "We may use statutes and dictionary definitions to determine the plain and ordinary meaning of undefined words." *Id.* (citation omitted).

[¶17.] In reviewing this Court's recent cases, we have consistently employed Merriam-Webster's dictionary to supply definitions for words with plain and ordinary meanings. *See, e.g.*, *State v. Ironheart*, 2024 S.D. 37, ¶ 15 n.3, 9 N.W.3d 721, 726 n.3; *State v. Long Soldier*, 2023 S.D. 37, ¶ 17, 994 N.W.2d 212, 219; *Stanley v. Dep't of Pub. Safety*, 2023 S.D. 13, ¶ 13, 987 N.W.2d 410, 414.

[¶18.] According to Merriam-Webster, a fence is "a barrier intended to prevent escape or intrusion or to mark a boundary. . . especially: such a barrier made of posts and wires or boards." *Fence,* Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/fence (last visited July 26, 2024). The

structure that Roberts erected around her garden does not meet the definition of a fence. Fences do not include overhead trusses overhanging the enclosed area.

[¶19.] This determination also comports with the express purposes outlined in the covenant, which include: 1) "to preserve open areas for wildlife migration and health," specifically by "allowing the free movement of big horn sheep in their wilderness preserve"; 2) "to preserve the general theme of the area"; and 3) "to provide for no build and no storage areas." The provision prohibiting fencing identifies "preserving visibility" as an additional purpose for that restriction. Roberts argues that the covenant exception allows for a cultivated and protected garden, and, as such, the covenant permits the trusses and hail netting. However, this argument is refuted by the purposes mentioned above. The exception allows for "protection of the growing area" but in a manner that "preserves visibility" in the open "no build" areas, does not disrupt the free movement of the big horns, and preserves the general theme of the neighborhood. Roberts' garden structure conflicts with these stated purposes.

[¶20.] Roberts' garden structure is more than a "fence" based on the plain and ordinary meaning of that term. Therefore, the structure violates the restrictive covenant.

***Whether the circuit court abused its discretion when it entered its permanent injunction.***

[¶21.] After it concluded that Roberts' structure violated the covenants, the circuit court issued a permanent injunction requiring her to remove the upper portions and bring the structure into compliance with the covenants. "[W]e review a [circuit] court's decision to grant or deny injunctive relief for an abuse of

discretion[.]" *New Leaf, LLC v. FD Dev. of Black Hawk LLC*, 2010 S.D. 100, ¶ 12, 793 N.W.2d 32, 35 (citation omitted). But "we still review the court's conclusions of law de novo and findings of fact under the clearly erroneous standard." *Id.* (citation omitted).

[¶22.] This case was decided on summary judgment and based on undisputed facts. After applying those facts to the terms of the covenant, the circuit court concluded that "Plaintiff has no other remedy at law to bring Defendants into compliance with the Restrictive Covenants[,]" and, therefore, "[a] permanent injunction is necessary and mandatory that Defendants' property be remediated by the removal of the overhead trusses, joists, and crossbeam to comply with the Restrictive Covenants." Based on this conclusion, a permanent injunction was an available remedy. *See* SDCL 21-8-14(1) (authorizing injunctive relief when "pecuniary compensation would not afford adequate relief").

[¶23.] The circuit court ordered Roberts to bring her fence in compliance with the restrictive covenant. However, the circuit court's order also enjoined Roberts from "rebuilding or placing any new structure in the 'No Build' zone that exceeds 8' in height as measured from ground level or violates the Restrictive Covenants." Spring Canyon could seek enforcement of the restrictive covenant. However, neither the restrictive covenant nor the Pennington County Ordinance contains any express limitation on the height of the allowed fence. Because the only issue before the circuit court related to the enforcement of the terms of the restrictive covenant, the circuit court erred when it imposed the eight-foot height restriction. We affirm the circuit court's order requiring Roberts to bring her fence into conformance with

#30511

the restrictive covenant but remand with direction that the order be modified to remove the fence height restrictions.

[¶24.]     JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.